In re John ANDERSON.

In re Cynthia ANDERSON.

UNITED STATES OF AMERICA

v.

MERIDEN BOX COMPANY.

Bankruptcy Nos. 2–89–01491, 2–91–02199.
Civ. No. 2:91CV00975 (AHN).

United States District Court,
D. Connecticut.

Jan. 27, 1993.

John V. Cardone, U.S. Dept. of Justice, Tax Div., Washington, DC, Stephen G. Best, I.R.S., East Hartford, CT, for U.S.

Robert A. Izzo, Elliot, Stanek, Izzo & Mazzaccaro, Southington, CT, for creditor-Meriden Box Co.

## RULING ON APPEAL FROM ORDER OF THE BANKRUPTCY COURT

NEVAS, District Judge.

The United States of America (the "Government") appeals from the Bankruptcy Court's memorandum of decision and order in *In re Anderson*, 131 B.R. 541 (Bankr. D.Conn.1991) (Krechevsky, C.J.)[1] pursuant to 28 U.S.C. § 158. At issue is the Bankruptcy Court's ruling that a real estate lien procured under Connecticut law by a creditor, the Meriden Box Company ("Meriden Box"), is prior in right to a federal income tax lien where the Internal Revenue Service (the "IRS") filed notice of the tax lien *after* Meriden Box had recorded a prejudgment attachment on the debtors' property and obtained a final state court judgment against the debtors but *prior* to the time Meriden Box recorded its judgment lien on the property in issue. For the reasons stated below, the Bankruptcy Court's order is affirmed.

---

1. On June 12, 1991, the Bankruptcy Court, upon the motion of Cynthia Anderson, wife of John Anderson, ordered the debtors' joint filing be administered in separate chapter 7 cases. *In re Anderson*, 131 B.R. 541, 543 n. 4 (Bankr.D.Conn. 1991). Accordingly, the court construes the Bankruptcy Court's determination that Meriden Box's lien is prior to the Government's federal income tax lien as controlling in both chapter 7 cases to the extent that the debtors have separate or distinct interests in the property in issue in this case.

*Standard of Review*

The standard of review by a district court of a bankruptcy court's order is settled law. *See In re Manville Forest Products Corp.*, 896 F.2d 1384, 1388 (2d Cir. 1990). The court accepts the bankruptcy court's findings of fact unless shown to be clearly erroneous. *Manville Forest*, 896 F.2d at 1388 (citing *Brunner v. New York State Higher Educ. Services Corp.*, 831 F.2d 395, 396 (2d Cir.1987) (per curiam); Bankr.Rule 8013). The court reviews the bankruptcy court's conclusions of law *de novo*. *Id.*

*Facts*

Applying these rules, the relevant facts in this case are as follows. On January 5, 1988, Meriden Box recorded a prejudgment real estate attachment on property owned by John and Cynthia Anderson (the "debtors") located at 611 Old Turnpike Road, Southington, Connecticut (the "property"). The attachment was pursuant to Conn.Gen. Stat. § 52–285.

On August 11, 1989, Meriden Box obtained a state court judgment in the amount of $29,186.00 plus costs against John Anderson, which judgment debt, Meriden Box asserts, totals $43,90.57.

On November 3, 1989, the IRS filed a notice of federal income tax lien in the amount of $56,258.57 against the debtors' property. Also on November 3, 1989, following the IRS' filing of that notice, the debtors filed for joint voluntary bankruptcy under Chapter 11 of the Bankruptcy Code.

On December 11, 1989, after obtaining relief from the automatic stay, Meriden Box recorded a judgment lien on the debtors' property pursuant to Conn.Gen.Stat. § 52–380a(b).

On April 15, 1991, pursuant to a court order, the property was sold free and clear of liens and encumbrances with the existing liens and encumbrances to attach to the proceeds of the sale. On April 23, 1991, the Bankruptcy Court ordered the debtors' chapter 11 case be converted into one under chapter 7. The Bankruptcy Court proceeded to appoint John J. O'Neill, Jr., Esq. as trustee of the estate. On June 12, 1991,

upon motion by Cynthia Anderson, the Bankruptcy Court ordered that the joint chapter 7 filing be severed into separate cases. *In re Anderson* at 543 n. 4.

On June 26, 1991, Meriden Box moved the Bankruptcy Court to determine the disposition of proceeds from the sales which were estimated by the Bankruptcy Court to approximate $41,000 at the time of its order and in which both Meriden Box and the IRS claimed lien interests.

In an order accompanied by a memorandum of decision dated September 4, 1991, the Bankruptcy Court ruled that the judgment lien obtained by Meriden Box was prior in right to the tax lien filed by the IRS. The Government now appeals from this order.

*Discussion*

The sole issue presented on appeal is whether the Bankruptcy Court erred in determining that the lien obtained by Meriden Box on the property was prior in right to an IRS tax lien filed on that same property where Meriden Box had recorded its lien subsequent to the filing of the notice of the federal income tax lien. In its ruling, the Bankruptcy Court followed *Hartford Provision Co. v. United States*, 579 F.2d 7 (2d Cir.1978), a Second Circuit case that considered a similar dispute involving competing liens on personal property. Applying *Hartford Provision*'s view that a lien under state law is perfected and choate upon entry of judgment when all that remains is the enforcement of that judgment, *see* 579 F.2d at 10–11, the Bankruptcy Court found that the judgment obtained by Meriden Box on August 11, 1989, was sufficient to perfect the prejudgment attachment lien held by Meriden Box on the property. *In re Anderson*, at 544.

In its ruling, the Bankruptcy Court analogized *Hartford Provision*'s consideration of the sixty-day period given a creditor to execute a judgment on a personal property lien to the four-month period for the relating back of judgments set forth in Section 52–380a(b), the Connecticut statute requiring the recording of final judgment liens on

real property. *Id.* at 6, n. 5. The Bankruptcy Court reasoned that Meriden Box's actual recording of the judgment lien subsequent to the IRS's filing of the notice of the federal tax lien was merely an attempt to enforce the lien not a requirement for perfection. Since Meriden Box complied with the time requirements of Section 52–380a(b) by recording its lien within four months from the August 11, 1989 date of judgment obtained from the state court, its lien on the debtors' property holds from the date of attachment. *Id.* at 7. In rejecting the Government's claim, the Bankruptcy Court concluded that the Government was " 'simply confusing perfection with enforcement,' " and that Meriden Box's lien held from the date of attachment pursuant to the August 11, 1989 judgment, well prior to the November 3, 1989, the date that the Government filed its notice of a federal income tax lien. *Id.* at 7 (quoting *Hartford Provision,* 579 F.2d at 11).

In its attack on the Bankruptcy Court's ruling, the Government contends that *Hartford Provision* is inapplicable to cases involving competing liens on real property. Specifically, the Government insists that *Hartford Provision* is distinguishable from the case at bar because *Hartford Provision* considered competing liens on *personal* rather than *real* property. The Government argues that the four-month relation back period set forth in the recording requirements for *real* property is functionally different from the sixty-day period given a creditor to levy on *personal* property. Insisting that Treasury Department regulations and federal case law prohibit the relation back doctrine from allowing a subsequently recorded judgment lien to defeat an intervening federal tax lien, the Government invites the court to limit *Hartford Provision*'s application exclusively to cases involving *personal* property and thereby reverse the Bankruptcy Court's ruling on the priority of liens in this case. Although its position is not without merit, the court declines the Government's invitation at this time.

 As a preliminary matter, the parties agree and the court notes that federal law governs the issue of priority between a competing federal tax lien and another lien or interest recognized by state law. *Aquilino v. United States,* 363 U.S. 509, 513–514, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960); *Hartford Provision,* 579 F.2d at 9; *PPG Indus., Inc. v. Hartford Fire Ins. Co.,* 531 F.2d 58, 61 (2d Cir.1976). A state created lien or interest can only compete against a federal income tax lien when that interest is perfected or choate: "when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." *United States v. Equitable Life Assur. Soc'y,* 384 U.S. 323, 327–328, 86 S.Ct. 1561, 1564, 16 L.Ed.2d 593 (1966). When a perfected lien under state law competes against a federal tax lien, the settled rule of "first in time is first in right" applies. *United States v. City of New Britain, Conn.,* 347 U.S. 81, 87, 74 S.Ct. 367, 371, 98 L.Ed. 520 (1954); *see also Equitable Life,* 384 U.S. at 327, 86 S.Ct. at 1564. Where the state created lien is inchoate and unperfected, however, a federal tax lien is superior to the state created lien regardless of whether the state created lien arose prior to the federal tax lien. *United States v. Pioneer Am. Ins. Co.,* 374 U.S. 84, 88, 83 S.Ct. 1651, 1654, 10 L.Ed.2d 770 (1963); *United States v. Erlandson,* 311 F.Supp. 399, 400 (D.Minn.1969). Thus, if the court determines that Meriden Box perfected its lien after the IRS filed notice of the federal tax lien, federal law dictates that the tax lien is prior in right to that of Meriden Box. *Id.*

 In determining whether a lien created under state law is "perfected," the lien must satisfy all the requirements of perfection under that state's law. *United States v. Security Trust,* 340 U.S. 47, 50, 71 S.Ct. 111, 113, 95 L.Ed. 53 (1950); *see also* 26 U.S.C. § 6323(a), (f); 26 C.F.R. § 301.6323(h)–1(g). Of interest here is the fact that Connecticut law requires a creditor, who previously obtained a pre-judgment attachment on real property and who subsequently obtains a judgment on that property, to record its judgment lien within four months from the date of that judgment. Conn.Gen.Stat. § 52–380a. If the creditor complies, "the lien on that proper-

ty shall hold from the date of attachment ...." *Id.* A federal regulation issued by the Treasury Department (the "Regulation"), moreover, states that a lien created under state law is not perfected unless:

the lien has ripened into judgment, even though under local law the lien of the judgment relates back to an earlier date. If recording or docketing is necessary under local law before a judgment becomes effective against third parties acquiring liens on real property, a judgment lien under such local law is not perfected with respect to real property until the time of such recordation or docketing. If under local law levy or seizure is necessary before a judgment lien becomes effective against third parties acquiring liens on personal property, then a judgment lien under such local law is not perfected until levy or seizure of the personal property involved.

26 C.F.R. § 301.6323(h)–1(g) (the "federal regulation"). At the heart of this dispute, therefore, is whether, in light of Connecticut law and the federal regulation, Meriden Box "perfected" its lien on the property prior to the IRS' filing of the notice of federal income tax lien.

The Government relies primarily on a textual analysis of both state statutes and the federal regulation in support of its claim that the federal income tax lien is superior to Meriden Box's lien in this case. First, the Government notes that the applicable federal regulation states expressly that if state law requires a creditor to record or docket a judgment lien on real property, such a lien "is not perfected with respect to real property *until the time of such recordation or docketing.*" 26 C.F.R. § 301.6323(h)–1(g) (emphasis added). Second, the Government points to the first sentence of Section 52–380a(b), the Connecticut Judgment Lien statute, which states: "*From the time of the recording of the judgment lien certificate,* the money judgment shall be a lien on the judgment debtor's interest in the real property described." Conn.Gen.Stat. § 52–380a(b) (emphasis added). The Government concludes that these provisions are dispositive of its claim that Meriden Box did not per-

fect its lien under the applicable law in this case until it formally recorded its judgment more than one month *after* the IRS filed notice of the federal tax lien.

As the Bankruptcy Court noted in its ruling, the Second Circuit's ruling in *Hartford Provision* appears to have determined "the issue adversely to the position of the IRS." *In re Anderson,* at 543. Admittedly, *Hartford Provision,* considered the issue of competing federal and state liens with respect to *personal* rather than *real* property. A careful reading of *Hartford Provision,* however, supports the Bankruptcy Court's view that this distinction is immaterial despite the Government's claim to the contrary.

First, *Hartford Provision* considered and rejected the Government's claim that the identical federal regulation controls the determination of when an unexecuted judgment lien on personal property is perfected. *Hartford Provision,* 579 F.2d at 10. The similarity between the recording requirement for real property and the execution requirement for personal property contained in the federal regulation is significant. Indeed, the regulation's declaration that liens on real property are not perfected until recorded or documented pursuant to state law must be read in conjunction with the regulation's additional requirement that a lien on personal property is not perfected until the execution of a levy or seizure on personal property is obtained in compliance with state law. More specifically, the Regulation states that if a "levy or seizure is necessary before a judgment lien becomes effective ... on personal property, then a judgment lien under such local law *is not perfected until levy or seizure of the personal property involved.*" 26 C.F.R. § 301.6323(h)–1(g) (emphasis added). Despite the express language of the federal regulation, *Hartford Provision* held that a state creditor's lien on the personal property in issue was prior in right to a federal tax lien even though the creditor did not execute the levy under Connecticut law *until after* the IRS had filed its notice of a

federal tax lien.[2] *Hartford Provision*, 579 F.2d at 10. Accordingly, any arguable distinction between the Second Circuit's consideration of the federal regulation in the context of a lien on personal property and this court's consideration of that regulation in the context of a lien on real property is simply too tenuous to justify a departure from *Hartford Provision.*

Second, limiting *Hartford Provision*'s application exclusively to cases involving prejudgment attachment liens on *personal* property, as the Government urges, runs counter to the underlying rationale of the Court of Appeals' ruling. In *Hartford Provision*, the Second Circuit was clear that "to accomplish its [the attachment's] purpose, the prejudgment attachment *must continue in effect for a period of time following the entry of the judgment.*" *Id.* at 10 (emphasis added). This view applies with equal force to attachments on *real* property. *Id.* at 9. Although the creditor in *Hartford Provision* had sixty-days to execute a levy on the property in issue, as compared to the four months authorized for the recording of a judgment lien on real property in this case, the specific duration of the statutory period for the relating back of judgment liens, whether on real or personal property, is immaterial to the Court's pronouncement that "to accomplish its purpose that attachment must continue in effect for a period of time following the entry of judgment." *See Id.* at 10, n. 4; *compare* Conn.Gen.Stat. § 52–328(a) *with* § 52–328(b) (state statute governing the duration of attachment liens on real estate as well as personal property). Accordingly, to adopt the Government's narrowing of *Hartford Provision* would appear to contravene that opinion.

Third, the Government's reliance on the express language in Section 52–380a(b) as a

further justification for distinguishing *Hartford Provision* is unpersuasive. Admittedly, that statute states that a money judgment shall be a lien on the real property in interest "*[f]rom the time of the recording of the judgment lien certificate.*" Conn.Gen.Stat. § 52–380a(b) (emphasis added). But this language, without more, does not support the Government's insistence that the method for determining the duration period of an attachment lien on real property is functionally distinct from the method employed by the *Hartford Provision* Court in determining the duration period of an attachment lien on personal property. *Cf. Hartford Provision*, 579 F.2d at 10.

■ A careful reading of the statutory provisions governing the duration of attachment liens on real estate suggests that the Section 52–380a(b) cited by the Government is not the final word on the determination of the date from which such liens hold on real property under Connecticut law. Indeed, the duration of *attachment* liens, such as the one in issue here, whether for *personal* or *real* property, is governed expressly by Conn.Gen.Stat. § 52–328, the statute cited by the Second Circuit in *Hartford Provision, see Hartford Provision,* 579 F.2d at 10, not § 52–380a(b), the statute relied upon by the Government. Just as § 52–328(a) grants a creditor sixty-days after final judgment to execute a levy on previously attached personal property so as to hold the lien from the date of attachment, § 52–328(b) states:

No real estate that has been attached may be *held subject to the attachment* to respond to the judgment obtained in the suit, either against the debtor or *any other creditor,* unless the judgment creditor places a judgment lien on the real

2. *Hartford Provision*'s rejection of the Government's position in this case is further underscored by Judge Mansfield's dissenting opinion. In that opinion, Judge Mansfield quotes the identical federal regulation for the view that a lien on personal property is not perfected until the date that creditor executes a levy or seizure on that property in compliance with Conn.Gen. Stat. 52–328. *See Hartford Provision*, 579 F.2d at 11 (Mansfield, J., dissenting). Indeed, Judge

Mansfield's dissent is virtually identical to the argument set forth by the Government in this case. *Id.* Thus, the court is satisfied that the Second Circuit is well aware of the scope and force of 26 C.F.R. § 301.6323(h)–1(g) and has, to date, rejected the view articulated by Judge Mansfield and the Government that the regulation controls the determination of when a lien is perfected pursuant to state law after judgment.

estate within *four months* after a final judgment.

(Emphasis added.) If a creditor records his attachment lien following judgment on real property within the allotted four-month period in compliance with § 52–328(b), as the creditor levied within the sixty-day period proscribed under § 52–328(a) in order to enforce the lien on personal property in *Hartford Provision,* the lien will hold from the date of attachment. *See also* Conn. Gen.Stat. § 52–380a(b) (lien that complies with time and wording requirements of this provision holds from the date of attachment). Contrary to the view propounded by the Government, therefore, the nature of the type of property is irrelevant to the underlying purpose or function of the attachment lien's relation back following judgment. *See Hartford Provision,* 579 F.2d at 10.

Under this construction of the Connecticut law governing the duration of attachment liens, the Bankruptcy Court's reliance on *Hartford Provision* was clearly appropriate. If § 52–328, the Connecticut Statute governing the duration of *attachment* liens, governed liens on personal property only, the Government's efforts to distinguish the sixty-day levy period on personal property from the four-month period for final judgment liens on real property might create a basis upon which to limit *Hartford Provision.* In light of § 52–328's application to attachment liens on real property as well as personal property, however, the Government seeks to create a functional distinction between the duration of real estate and personal property liens that simply does not exist. Accordingly, the court declines to distinguish *Hartford Provision* on similar grounds.

The court would be remiss if it did not acknowledge the merit in the Government's claim that a federal tax lien is prior in right to a final judgment lien on real property recorded by a creditor under state law *after* the IRS had noticed the federal tax lien. Such merit, however, lies not in the distinction between real and personal property attachment liens, but in the possibility that *Hartford Provision* may have been wrongly decided. Indeed, the strongest argument in support of the Government's position is set forth in Judge Mansfield's dissent in *Hartford Provision* itself. The court, however, is not free to speculate as to the relative merits of the dissenting and majority views and impulsively reverse established Second Circuit precedent on this issue. *United States v. Salerno,* 868 F.2d 524, 534 (2d Cir.) (Court is bound by precedent unless overruled *en banc* by Second Circuit or the Supreme Court), *cert. denied,* 491 U.S. 907, 109 S.Ct. 3192, 105 L.Ed.2d 700, 493 U.S. 811, 110 S.Ct. 56, 107 L.Ed.2d 24, 25 (1989); *Board of Ed. of City Sch. Dist. of City of New York v. Hufstedler,* 641 F.2d 68, 70 (2d Cir.1981) (same). Because the reversal of established precedent in this circuit is more appropriately left to the Second Circuit itself and/or the United States Supreme Court, *see id.,* the court concludes that *Hartford Provision* governs the outcome of this case. Accordingly, the Bankruptcy Court's order is affirmed.

### Conclusion

For the reasons stated above, the Bankruptcy Court's order in *In re Anderson,* 131 B.R. 541 (Bankr.D.Conn.1991) is AFFIRMED.

SO ORDERED.